IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRANDON PORTER,

                      Plaintiff,                      OPINION AND ORDER

v.

                                                        18-cv-138-wmc

WARDEN MR. M. DITTMAN, et al.

                      Defendants.

---

In this proposed civil action, *pro se* plaintiff Brandon Porter alleges that various employees of the Colombia Correctional Institution violated his constitutional rights by manufacturing a conduct report against him and wrongfully disciplining him. Because plaintiff is a prisoner seeking redress from "officer[s] or employee[s] of a governmental entity," the court is required to screen his proposed complaint. *See* 28 U.S.C. § 1915A. For the reasons set forth below, Porter has failed to state a claim upon which relief can be granted. Accordingly, his proposed complaint must be dismissed, although he will be given an opportunity to replead.

ALLEGATIONS OF FACT[1]

At all relevant times, plaintiff Brandon Porter was an inmate at Columbia Correctional Institution in Portage, Wisconsin. (Compl. (dkt. #1) ¶ 3.) Porter has named seven defendants: Warden M. Dittman, Security Director Weber, Captain Lucas Wogernese, Lieutenant Beuttner, Sergeant Carl, Unit Manager Lindsay Walker and

---

[1] In addressing any *pro se* litigant's complaint, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of this order, the court assumes the following facts based on the allegations in plaintiff's complaint (dkt. #1), construed in a light most favorable to him.

Examiner Mary Leiser. All defendants are or were employed by the Wisconsin Department of Corrections at Columbia Correctional Institution. (*Id.* ¶¶ 4-10.)

The chain of events leading up to Porter's claims began in November of 2015, when prison officials apparently started to suspect drug activity in the housing unit in which Porter was lodged. When questioned about this suspected activity on November 17, 2015, Porter denied knowing anything about it. (*Id.* ¶¶ 22-23.) At that time, he was also required to take a urine test (presumably to check for drug use) which he passed. Two days later, on November 19, 2015, Sergeant Carl searched the cell that Porter shared with another inmate. (*Id.* ¶ 21.) After being informed that contraband had been found in his cell, Porter again denied knowing anything about drug activity and maintained his innocence. (*Id.* ¶ 23.) He was required to take a second urine test, which he also passed. (*Id.* ¶ 21.)

The next day, plaintiff was placed in Temporary Lock-Up ("TLU"), prompting him to write several letters to Security Director Weber, as well as speak to multiple staff members asking why he was placed in TLU. (*Id.* ¶¶ 24-25.) No one gave him an answer. Instead, he was held in TLU for eleven days before receiving a "placement form," which stated that he had been put in TLU "pending investigation for contraband found in cell" and another form stating simply "drug paraphernalia." (*Id.* ¶ 26.) At around noon on his twelfth day in TLU, Porter was released. At that time, Carl told Porter that it was his "lucky day" because the contraband that was allegedly found in Porter's cell had been "LOST." (*Id.* ¶ 27.)

A few days later, Lieutenant Beuttner asked Porter, "So how's it feel to be off TLU

2

Mr. Porter?" (*Id.* ¶ 28.) When he did not reply, Beuttner then said, "It's okay, you got off this time but we'll get you next time, you'll slip up again." (*Id.*)

Two months later, on January 22, 2016, Lieutenant Beuttner and two other officers took Porter back to TLU. (*Id.* ¶ 13.) Beuttner did not explain why Porter was being placed on TLU status, but said that Porter would find out soon enough unless he had information on "how the drugs [were] coming in." (*Id.* ¶ 15.) After Porter denied knowing "what you're talking about," Beuttner retorted, "Well, if that's how you're going to play it, then I can't help you." (*Id.* ¶¶ 15-16.) Porter was then strip-searched and placed in TLU. Later that day, Correctional Officer Morgan gave Porter paperwork explaining that he had been "placed on TLU status pending investigation for miscellaneous contraband and drug paraphernalia found in cell." (*Id.* ¶ 17.)

Six days into his second stay in TLU, January 28, Porter was pulled from his cell and brought to an interview room where Unit Manager Walker served Porter with a conduct report written by Sergeant Carl. Walker offered Porter a disposition of ninety days in segregation (presumably in exchange for not contesting the conduct report), but he requested a hearing instead.

Porter's hearing began on February 8, 2016, but was allegedly adjourned because Carl had not yet answered any of Porter's questions and also because the evidence had not been produced or reviewed by the hearing committee. The hearing resumed three days later, February 11, during which Porter attempted to question Carl. After the hearing committee "denied" all of his questions, Porter then asked the committee about the alleged contraband. Neither the physical contraband nor pictures of the contraband were

produced for Porter's review at the hearing. Rather, one of the hearing officers, Captain Wogernese, said that he had reviewed the evidence with the committee and had seen pictures of the contraband. Wogernese also said that he believed Porter had the contraband in his cell based on the physical evidence, the credible testimony of the staff, and Porter's two previous charges. In contrast, Porter emphasizes that he had no past history of drug use or possession since being incarcerated, nor had he ever failed a urine test during his ten years of incarceration.

The hearing committee sentenced Porter to ninety days in segregation. After appealing this disposition to Warden Dittman, Porter was confined in the D.S.1 segregation unit from January 22 until February 16, 2016. Porter complains that during his confinement he was housed with mentally ill inmates who would flood their cells, throw bodily waste, kick at their cell doors, and otherwise make noise such that Porter found it difficult to sleep. Porter complained about these conditions, but to no avail until February 16, when he was moved to the D.S.2 segregation unit. There, Porter received more privileges, but was forced to sleep on the floor of his cell. Porter made several attempts to be moved. He was told by Walker, "If you don't like it don't come to the hole." (*Id.* ¶ 40.)

Ultimately spending a total of forty-three days in segregation, Porter was released back to the standard housing unit on March 4, 2016. After his release, Porter wrote to Warden Dittman to ask if his release had anything to do with his appeal; Dittman then sent back a copy of his paperwork stating "DISMISSED." Among other things, Porter argues that Dittman's response confirms defendants "had indeed knowingly and willingly

4

lied and falsified documentation to conspire against [him]." (*Id.* ¶ 41.)

OPINION

Plaintiff alleges a number of constitutional violations under the umbrella of 42 U.S.C. § 1983. Specifically, he claims that defendants violated the Eighth Amendment, the First Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment by: planting contraband in his cell (or alternatively, falsely claiming to have found contraband, when no such contraband ever existed); placing him in TLU despite knowing plaintiff was innocent; failing to protect him from being falsely placed in TLU; falsifying documents and testimony (presumably to use against plaintiff in the disciplinary proceedings); housing him in poor conditions; and failing to investigate staff misconduct that led to his false punishment. The court will address each of his claims of constitutional violations in turn.

**I. Procedural Due Process**

To state a procedural due process claim, a plaintiff must show that: (1) he has a liberty or property interest with which the state interfered; and (2) the procedures afforded him to address that interference were constitutionally deficient. *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). With regard to the first prong, a prisoner's placement in disciplinary segregation may implicate a liberty interest under some circumstances. *See Marion*, 559 F.3d at 697 (citing *Wilkinson v. Austin*, 545 U.S. 209, 224 (2015); *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). To fall within the protections of the Fourteenth Amendment, such

a placement must result in an "'atypical and significant hardship' when compared to 'the ordinary incidents of prison life.'" *Townsend v. Fuchs*, 522 F.3d 765, 768 (7th Cir. 2008) (quoting *Sandin*, 515 U.S. at 484-86). "[B]oth the duration and the conditions of the segregation must be considered in the due process analysis." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014). As to the second prong, in the context of a prison disciplinary proceeding, "due process requires that [the prisoner] receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken." *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

Here, plaintiff alleges that he was effectively placed in TLU for fifty-five days (twelve days initially, then after a two-month break, again for forty-three days). According to Porter, for twenty-six days of his longer period of segregation, he was in the D.S.1 unit where he was housed around inmates who made noise, flooded their cells, and threw bodily waste. The remaining seventeen days of that period were allegedly spent in the D.S.2 unit, where he was forced to sleep on the floor.[2] The length of Porter's TLU placement does not alone implicate a liberty interest. *See, e.g., Fuchs*, 522 F.3d at 770-71 (fifty-nine day placement in TLU did not implicate liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (two month placement in segregation did not implicate liberty interest). Considering both the duration *and* conditions of Porter's TLU placement, however, Porter

---

[2] Plaintiff's initial, twelve day TLU placement was on his own "housing unit." (Complaint (dkt. #1) ¶ 24.)

6

may have alleged sufficient facts to state a claim, at least at this screening stage. *See Gillis v. Litscher*, 468 F.3d 488 (fourteen day placement in segregation may have implicated liberty interest where inmate was denied sensory input, had no privileges, had to sleep naked on concrete slab); *Wilkinson v. Austin*, 545 U.S. 209, 214-224 (2005) (prisoners' liberty interests implicated when placed in segregation depriving them of virtually all sensory stimuli or human conduct for an indefinite period of time); *but see Obriecht v. Raemisch*, 565 F. App'x 535, 539-40 (7th Cir. 2014) (seventy-eight day confinement with mattress placed directly on wet floor did not implicate liberty interest); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997) (seventy day confinement with another inmate in one-man cell for twenty-four hours a day did not implicate liberty interest).

Even assuming that Porter has alleged sufficient facts to find a protected liberty interest, he has not stated a due process violation because the procedures he received were not deficient. Plaintiff emphasizes that he was never presented with the allegedly planted/nonexistent contraband, but such proof is not constitutionally required. Indeed, even if the evidence against him had allegedly been falsified or made up, that does not mean that the *procedure* afforded was constitutionally deficient. *See Lagerstrom v. Kingston*, 463 F.3d 621, 624–25 (7th Cir. 2006) ("The fact (if it were true) that the evidence against [plaintiff] had been made up would similarly not cast doubt on the basic procedures that were followed. . . . The system has direct remedies for perjured testimony. Here, [plaintiff] received all the process he was due."); *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) ("We find that an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can

7

be granted where the procedural due process protections" have otherwise been provided.).

Plaintiff alternatively argues that Warden Dittman's final dismissal of the charge against him confirms his allegations "that all the defendants . . . had indeed knowingly and willingly lied and falsified documentation to conspire against [him]." (Compl. (dkt. #41) ¶ 41.) Again, however, "[t]he fact that the outcome was eventually overturned does not mean that the hearing failed to satisfy minimal procedural requirements." *Lagerstrom*, 463 F.3d at 624. If anything, plaintiff's ultimate vindication suggests the procedure *was* adequate.

## II. Eighth Amendment

To state an Eighth Amendment claim, a plaintiff must show: (1) an objective deprivation of his or her right to minimally civilized incarceration (as judged by contemporary standards of decency); and (2) that prison authorities subjectively acted with deliberate or callous indifference or reckless disregard to this constitutional right. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A prisoner is guaranteed "humane conditions of confinement" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Unfortunately for plaintiff, allegations that he was housed around mentally ill inmates who flooded their cells and made excessive noise are insufficient to state an Eight Amendment claim. *See Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) (holding that inmate housed with psychologically disturbed cellmate did not state Eighth Amendment claim); *Watkins v. Lancor*, 558 F. App'x 662, 665 (7th Cir. 2014) ("[A]llowing a wet floor to go unremedied would not violate the Eighth Amendment."); *King v. Frank*, 328 F. Supp. 2d 940, 946 (W.D. Wis. 2004) ("Although plaintiff alleges that he was 'depressed' by the

noise, I cannot infer reasonably from plaintiff's complaint that the noise caused him an injury significant enough to give rise to an Eighth Amendment violation."). Although exposure to human waste can raise Eighth Amendment concerns, *see, e.g.*, *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989), plaintiff did not allege that he was actually exposed to human waste, only that he was housed "around" inmates who would "throw[] their bodily waste." (Compl. (dkt. #1) ¶ 37.) Finally, plaintiff's allegation that he was forced to sleep on the floor for two weeks is also not sufficient to support an Eight Amendment claim. *See, e.g.*, *Askew v. Fairman*, 880 F. Supp. 557, 562 (N.D. Ill. 1995) (holding that inmate who had to sleep on cold floor for multiple weeks had not stated an Eighth Amendment claim). Under the current state of the law, therefore, plaintiff has not alleged sufficient facts to state a claim of that he was deprived of his right to minimally civilized incarceration, and so his Eighth Amendment claims must be denied.[3]

## III. First Amendment

Plaintiff next claims that defendants retaliated again him in violation of his First Amendment rights. To state a First Amendment retaliation claim, a plaintiff must allege three elements: (1) speech protected by the First Amendment; (2) a deprivation that would likely deter similar activity in the future; and (3) the activity was "at least a motivating

---

[3] Plaintiff also mentioned in his allegations of fact that he was strip searched before being placed in TLU. A body search may violate the Eighth Amendment if it is done "for harassment purposes or any purposes that could reasonably be said to be punishment." *Peckham v. Wis. Dep't. of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (noting that "a search conducted in a harassing manner intended to humiliate and inflict psychological pain" would be an Eighth Amendment violation). However, plaintiff has not suggested that there was any such improper purpose for the search. Therefore, this deprivation cannot support plaintiff's Eighth Amendment claim either.

9

factor" in the defendant's decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

To determine whether an inmate's speech is protected under the First Amendment, the court must consider whether the speech is "inconsistent with legitimate penological interests." *Id.* at 551. Plaintiff has alleged a number of speech acts that could arguably be protected under the First Amendment. In particular, plaintiff alleges that he (1) truthfully responded to defendants' investigation of drug activity in his housing unit and (2) complained about defendants' actions against him at nearly every stage of the disciplinary proceedings. Truthfully answering questions in an investigation generally furthers legitimate penological interests, *see id.* (citing *Cornell v. Woods*, 69 F.3d 1383 (8th Cir. 1995)), and an inmate's petition for redress of grievances has generally been recognized as protected, *see Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006).

Moreover, as to the second element of a retaliation claim, the issuance of the conduct report and Porter's punishment of forty-three days in TLU are deprivations that are generally found to deter similar First Amendment activity in the future. *See Bridges*, 557 F.3d at 552 (stating that unjust disciplinary charges may chill speech and may be a basis for an actionable First Amendment retaliation claim); *Greene v. Doruff*, No. 09-CV-291, 2010 WL 3809828, at *4 (E.D. Wis. Sept. 24, 2010), *aff'd in part, rev'd in part*, 660 F.3d 975 (7th Cir. 2011) ("Courts have acknowledged that receiving retaliatory conduct reports may deter inmates from exercising their First Amendment rights."); *Walker v. Bertrand*, 40 F. App'x 988, 989 (7th Cir. 2002) (sentence of segregation sufficient basis to state a First Amendment retaliation claim); *Jackson v. Thurmer*, 748 F. Supp. 2d 990, 1003

(W.D. Wis. 2010) (forty-five days in disciplinary segregation sufficient injury to state First Amendment retaliation claim).

However, Porter has failed to allege adequate facts to support the third element of his retaliation claim. He writes that defendants:

> knowingly, willingly and maliciously falsif[ied] documents in order to place the Plaintiff in segregation for things they all knew he wasn't guilty of, claiming they found evidence of drugs/drug paraphernalia in the Plaintiff's cell, then claiming to destroy the evidence that they knew they were never in possession of and leaving no trace or record violated the Plaintiff's rights and constitutes Retaliation under the First Amendment . . . .

(Compl. (dkt. #1) ¶ 36.) However, these allegations are merely duplicative of plaintiff's procedural due process claim and do not permit a reasonable inference that his speech was a *motivating factor* in any of defendants' actions. Nowhere else in his complaint does he suggest that his speech was connected -- let alone a motivating factor -- to any of the defendants' adverse actions against him. The court reads plaintiff's allegations generously, *see Haines*, 404 U.S. at 521, and acknowledges that in this circuit even conclusory allegations of retaliation are generally sufficient to state a claim, *see Higgs v. Carver*, 236 F.3d 437, 439 (7th Cir. 2002). Still, the facts alleged do not permit a reasonable inference that plaintiff's speech bore *any* relation to defendants' adverse actions. Accordingly, while plaintiff will be given the opportunity to replead facts related to his claim, he may not proceed on a retaliation claim based on the allegations in his complaint.
based on the facts alleged no reasonable inference can be drawn connecting plaintiff's speech to defendants' adverse actions.

## IV. Equal Protection

Plaintiff also invokes the Equal Protection Clause of the Fourteenth Amendment in asserting his legal claims. "The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation." *Nabozny v. Podlesny*, 92 F.3d 446, 453–54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982)). To establish a prima facie case of discrimination under the Equal Protection Clause, a plaintiff is required to show (1) "that he is a member of a protected class"; (2) "that he is otherwise similarly situated to members of the unprotected class"; and (3) "that he was treated differently from members of the unprotected class." *Brown v Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)).[4] Here, plaintiff has made no showing at all that he was discriminated against based on any protected classification. Therefore, the court must dismiss his equal protection claims.

## V. Failure to Intervene

Finally, among plaintiff's legal claims is the argument that defendants violated his rights when they failed to protect him from being falsely placed in TLU and from the

---

[4] A plaintiff may also in some circumstances state an equal protection claim based on a "class-of-one" theory if he demonstrates that he has been irrationally singled out for disparate treatment. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008). However, "class-of-one" claims are not available for certain discretionary decisions, *see id.*, and this court has previously held that such claims "are likely never cognizable in the prison disciplinary context," *Atkinson v. Mackinnon*, No. 14-CV-736-BBC, 2015 WL 506193, at *1 (W.D. Wis. Feb. 6, 2015). Moreover, plaintiff does not suggest that he was irrationally singled out and discriminated against; therefore he has not stated an equal protection claim based on a "class-of-one" theory.

"many other wrongs done in this case." (Compl. (dkt. #1) ¶ 46.)

A prison official may be liable for a failure to intervene if he knew about a constitutional violation and had the ability to intervene, but failed to do so "with deliberate or reckless disregard for the plaintiff's constitutional rights." *Koutnik v. Brown*, 351 F. Supp. 2d 871, 876 (W.D. Wis. 2004) (citing *Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004)). Naturally, a prerequisite for such a claim is the existence of a constitutional violation. Because the court has concluded that plaintiff has not stated a claim for any constitutional violation, plaintiff's failure to intervene claim necessarily fails.

In sum, plaintiff here has failed to state any claim upon which relief can be granted. Although plaintiff will be given leave to replead, the court does not anticipating allowing plaintiff to proceed as it appears unlikely that any proposed amendment will cure the deficiencies discussed above.

ORDER

IT IS ORDERED that:

1) Plaintiff Brandon Porter's complaint is DISMISSED without prejudice for failure to state a claim.

2) Plaintiff has until **December 26, 2019,** to submit an amended complaint. If plaintiff fails to respond to this order by that date, the court will dismiss his claims without prejudice for failure to prosecute.

Entered this 4th day of December, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge